In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00063-CR


______________________________




GREGORY PLATER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 241st Judicial District Court


Smith County, Texas


Trial Court No. 241-0603-05




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Gregory Plater was convicted of aggravated robbery with a deadly weapon in Smith County. (1)
On appeal, he contests the sufficiency of the evidence to support his conviction; claims that a
photographic lineup shown to the victim was impermissibly suggestive; and argues the trial court
should have granted a directed verdict. On our review of the proceedings in the court below and the
applicable law, we overrule Plater's points of error and affirm the trial court's judgment and
sentence. (2) 

I. Factual Background

 On December 30, 2004, Eric Taylor drove from his home in Norman, Oklahoma, to play
blackjack at a casino in Bossier City, Louisiana. In about an hour he won $800.00; he cashed out
these winnings, as well as the initial $600.00 in chips he had purchased, and left the casino. Taylor
testified  he  did  not  notice  anyone  following  him  as  he  left  the  casino.  He  drove  west  on
Interstate 20 for about an hour; around 11:00 p.m. he saw "blinking" lights behind him. Believing
this to be a law enforcement vehicle, Taylor stopped his vehicle on the side of the road. An
individual in a bright orange sweatshirt approached Taylor's driver's window and asked for
identification. Taylor said the man did not lean over to his window; after taking Taylor's license,
though, the man walked behind Taylor's car and opened the passenger door. He leaned "70, 80 per
cent [sic]" of his body in the passenger door, placed a pistol at Taylor's side, and demanded money. 
Taylor recognized the man as one who had sat at his blackjack table earlier in the evening and
identified him in court as Plater. During their time at the game table, on three occasions Plater had
asked Taylor for a chip. Each time Taylor refused. After Taylor was stopped on Interstate 20 and
Plater demanded money, Taylor gave Plater $1,100.00, part of the money he had brought with him
on his trip. Plater counted the money, then said he wanted the money from the casino. When Taylor
hesitated, Plater told him, "You're about to get shot." Taylor then gave Plater the $1,400.00 from
the casino. Plater exited the vehicle, told Taylor to "just drive," and slammed the passenger door. 
 Taylor drove a few minutes and then called the police. Plater testified that he did indeed play
blackjack at the same casino at the same time as Taylor, but that he left that casino for another. He
stayed a short time there, then left and visited a friend about twenty miles south of the Bossier City
area, returning after midnight to one of the casinos. A security officer for the second casino testified
there was no record of Plater visiting that second casino the night of the robbery. 

II. Legal and Factual Sufficiency

 

 Plater's first two points of error claim, respectively, that the evidence was factually and
legally insufficient to support the jury's verdict. In reviewing the legal sufficiency of the evidence,
we view the evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the
evidence, we view all the evidence in a neutral light. The evidence is factually insufficient when,
although it is legally sufficient, it is so weak that the verdict appears to be clearly wrong or
manifestly unjust, or the verdict is against the great weight and preponderance of the evidence.
Castillo v. State, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d 404,
414-15, 417 (Tex. Crim. App. 2006).

 The indictment alleged that Plater, "while in the course of committing theft of property and
with intent to obtain or maintain control of said property, intentionally and knowingly threaten to
place Eric Taylor in fear of imminent bodily injury or death, and . . . did then use or exhibit a deadly
weapon, to wit: a firearm." 

 The State offered evidence as to the elements of the crime. Taylor testified he sat next to
Plater at a blackjack table in a casino earlier the same day of the robbery. He identified Plater as the
man who signaled for him to pull his car over and then threatened him with a pistol and demanded
money. Not content with the first $1,100.00 Taylor handed him, Plater specifically demanded "the
money from the casino." From a photographic lineup, Taylor identified Plater as the robber. This
evidence shows Plater intentionally or knowingly acted to deprive Taylor of his property. 

 Taylor also testified he feared for his life when Plater threatened him at gunpoint. According
to Taylor, he could "see the barrel and feel the barrel being placed against me," saw Plater pull the
gun from his pocket or side, the gun was a "pistol-type weapon" with a black barrel, he could not tell
if it was cocked, and he thought it could kill him. Plater told Taylor he was "about to get shot,"
evidence that Plater intentionally or knowingly threatened or placed Taylor in fear of imminent
bodily injury or death. And, despite the fact that no weapon was ever found, Taylor's description of
the gun and Plater's statements are evidence a firearm was used or exhibited in the commission of
the robbery. See Tex. Penal Code Ann. § 29.03 (Vernon 2003); Davis v. State, 180 S.W.3d 277,
287 (Tex. App.--Texarkana 2005, no pet.); Riddick v. State, 624 S.W.2d 709, 710 (Tex.
App.--Houston [14th Dist.] 1981, no writ) ("Absent any specific indication to the contrary at trial,
the jury may make the reasonable inference, from the victim's testimony, that a gun was used in the
commission of a crime and that the gun was a firearm.").

 The Texas Court of Criminal Appeals has held that testimony using any of the terms "gun,
pistol or revolver" is sufficient to authorize the jury to find that a deadly weapon was used. Wright
v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979). In addition, words spoken by the accused
during the commission of the offense may be considered in determining whether a weapon is a
deadly one. See English v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983). Taylor testified
Plater told him that, if he did not give him the money from the casino, "You're about to get shot." 

 The evidence was sufficient, both legally and factually, to sustain the jury's verdict. We
overrule Plater's first two points of error. 


III. No Error in Admission of Photographic Lineup


 Plater's third point of error claims the trial court erred in admitting a photographic lineup law
enforcement showed to Taylor. The lineup is a single page with six pictures of African-American
men, each appearing to be generally of similar ages and stature. (3) Plater argues the lineup was
impermissibly suggestive. We disagree and will overrule this point of error.

 A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion
standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); Montgomery v. State,
810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g). A trial court abuses its discretion if its
decision was arbitrary or unreasonable, Brown v. State, 960 S.W.2d 772, 778 (Tex. App.--Dallas
1997, pet. ref'd), or if, given the record and the law, the decision fell outside the zone of reasonable
disagreement. See Benitez v. State, 5 S.W.3d 915, 918 (Tex. App.--Amarillo 1999, pet. ref'd).

 We  use  "a  two-step  analysis  to  determine  the  admissibility  of  an  in-court
identification: 1) whether the out-of-court identification procedure was impermissibly suggestive;
and, if suggestive, 2) whether that suggestive procedure gave rise to a substantial likelihood of
irreparable misidentification." Conner v. State, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001); see
Simmons v. United States, 390 U.S. 377, 384 (1968); Stovall v. Denno, 388 U.S. 293, 302 (1967);
Barley, 906 S.W.2d at 33. "[A] finding that a challenged pretrial identification procedure was not
in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it
created a substantial likelihood of misidentification." Ford v. State, 919 S.W.2d 107, 117 (Tex.
Crim. App. 1996) (quoting Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988)); see
Williams v. State, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984).

 In determining if a photographic display is impermissibly suggestive, we examine the totality
of the circumstances. Each case must be decided on its own facts. Crawford v. State, 770 S.W.2d
51, 52 (Tex. App.--Texarkana 1989, no pet.) (citing Simmons v. United States, 390 U.S. 377 (1968);
Limuel v. State, 568 S.W.2d 309 (Tex. Crim. App. [Panel Op.] 1978)). In Crawford, we held that,
where the victim had a sufficient opportunity to see the defendant, the victim's observation and
description of Crawford had a sufficient independent origin to support her in-court identification. 
Crawford, 770 S.W.2d at 52-53. 

 Plater argues that the lineup was suggestive because his picture was placed in the bottom
right corner of the page "where the victim's eyes would naturally fall first" and because Plater's
photograph had the "lightest background." We are not convinced the photographic lineup shown to
Taylor was impermissibly suggestive. Viewing the entire array, we cannot say Plater's picture is
"highlighted" or stressed over the other photographs. (4) Cf. Garcia v. State, 563 S.W.2d 925, 929
(Tex. Crim. App. 1978) (in totality of circumstances, that not all subjects of photographs had
moustaches or tattoos, and appellant was several inches taller than other subjects, did not render
lineup impermissibly suggestive). 

 Even if we found the array impermissibly suggestive, we find no evidence this "suggestive
procedure" gave rise to a substantial likelihood of irreparable misidentification. Factors to be
considered in reviewing identification testimony include: (1) the witness' opportunity to view the
defendant during the commission of the offense; (2) the witness' degree of attention; (3) the accuracy
of the prior description of the accused; (4) the level of certainty of the identification; and (5) the
amount of time between the crime and confrontation. Hill v. State, 692 S.W.2d 716, 721 (Tex. Crim.
App. 1985) (citing Munguia v. State, 603 S.W.2d 876, 878 (Tex. Crim. App. 1980)). Taylor testified
he recognized Plater from the casino. This identification is made more reliable by Taylor's
recollection that on three occasions, at the blackjack table, Plater asked Taylor for a chip. Taylor
said he had nothing to drink at the casino and had played at the table for about an hour. This
indicates he had a good opportunity to observe Plater. He told Deputy Dale Hukill, the night of the
robbery, that the robber was a man Taylor had seen at the casino. When Lieutenant Pamela Dunklin
presented Taylor with the photographic lineup, she told him not to pick anyone unless Taylor was
"a hundred percent sure." Taylor "took about two seconds" to pick Plater out of the photographs. 
Although more than two years elapsed between the crime and trial, there is nothing in the record to
impugn Taylor's certainty of his identification. After viewing a lineup, later identification is
admissible as long as the record demonstrates that a witness' prior knowledge of the accused serves
as an independent source for the identification. Jackson v. State, 657 S.W.2d 123, 130 (Tex. Crim.
App. 1983). No error is shown. 


IV. Motion for Directed Verdict


 Plater's last point of error claims the trial court should have granted Plater's request for a
directed verdict. Specifically, Plater claims there was no evidence of a deadly weapon being used
in the commission of the robbery.

 This issue has been discussed in the legal sufficiency discussion, and we will not repeat it. 
Suffice it to say that, even though the weapon used was never produced, other evidence was
sufficient to prove the use of a deadly weapon. Taylor testified Plater pulled a gun on him, as
opposed to just using his fingers, because he "could see the barrel and felt the barrel being placed
against me." When Taylor hesitated giving Plater the money, he said Plater told him, "You're about
to get shot." It is not required the State produce the actual weapon used in the offense. See Morales
v. State, 633 S.W.2d 866, 868 (Tex. Crim. App. [Panel Op.] 1982) (concluding that, although knife
was not produced, testimony established that knife was deadly weapon); Rogers v. State, 795 S.W.2d
300, 303 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (holding that, although gun was not in 

evidence, testimony supported finding that appellant carried gun at time of robbery). The trial court 




did not err in denying Plater a directed verdict. We overrule this point and affirm the judgment and
conviction. 


 Jack Carter

 Justice


Date Submitted: April 30, 2008

Date Decided: June 20, 2008


Do Not Publish 



1. This case was transferred to this Court pursuant to the Texas Supreme Court's docket
equalization program.
2. Plater does not challenge his life sentence.
3. The lineup should depict persons with sufficient similarity in appearance to give the witness
a reasonable opportunity to identify the defendant and to establish that the identification is reliable. 
See Ford v. State, 794 S.W.2d 863, 866 (Tex. App.--El Paso 1990, pet. ref'd). The photographs
used in the lineup should depict persons of the same race, general skin color, age, and height as the
suspect. See, e.g., Barley v. State, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995); Rivera v. State,
808 S.W.2d 80, 95 (Tex. Crim. App. 1991). 
4. In a recent unpublished decision, the Waco Court of Appeals was presented with a similar
argument: the appellant contended the photographic lineup in his case was impermissibly suggestive
where there was a "halo" effect on his picture; reviewing the record in that case, the reviewing court
found the lineup was not impermissibly suggestive. Jackson v. State, No. 10-07-00089-CR, 2008
Tex. App. LEXIS 698 (Tex. App.--Waco Jan. 30, 2008, pet. ref'd) (mem. op., not designated for
publication).