

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00063-CR
_____

GREGORY PLATER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 241st Judicial District Court
Smith County, Texas
Trial Court No. 241-0603-05

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Gregory Plater was convicted of aggravated robbery with a deadly weapon in Smith County.[1] On appeal, he contests the sufficiency of the evidence to support his conviction; claims that a photographic lineup shown to the victim was impermissibly suggestive; and argues the trial court should have granted a directed verdict. On our review of the proceedings in the court below and the applicable law, we overrule Plater's points of error and affirm the trial court's judgment and sentence.[2]

## I.    Factual Background

On December 30, 2004, Eric Taylor drove from his home in Norman, Oklahoma, to play blackjack at a casino in Bossier City, Louisiana. In about an hour he won $800.00; he cashed out these winnings, as well as the initial $600.00 in chips he had purchased, and left the casino. Taylor testified he did not notice anyone following him as he left the casino. He drove west on Interstate 20 for about an hour; around 11:00 p.m. he saw "blinking" lights behind him. Believing this to be a law enforcement vehicle, Taylor stopped his vehicle on the side of the road. An individual in a bright orange sweatshirt approached Taylor's driver's window and asked for identification. Taylor said the man did not lean over to his window; after taking Taylor's license, though, the man walked behind Taylor's car and opened the passenger door. He leaned "70, 80 per

_____

[1]This case was transferred to this Court pursuant to the Texas Supreme Court's docket equalization program.

[2]Plater does not challenge his life sentence.

2

cent [sic]" of his body in the passenger door, placed a pistol at Taylor's side, and demanded money. Taylor recognized the man as one who had sat at his blackjack table earlier in the evening and identified him in court as Plater. During their time at the game table, on three occasions Plater had asked Taylor for a chip. Each time Taylor refused. After Taylor was stopped on Interstate 20 and Plater demanded money, Taylor gave Plater $1,100.00, part of the money he had brought with him on his trip. Plater counted the money, then said he wanted the money from the casino. When Taylor hesitated, Plater told him, "You're about to get shot." Taylor then gave Plater the $1,400.00 from the casino. Plater exited the vehicle, told Taylor to "just drive," and slammed the passenger door.

Taylor drove a few minutes and then called the police. Plater testified that he did indeed play blackjack at the same casino at the same time as Taylor, but that he left that casino for another. He stayed a short time there, then left and visited a friend about twenty miles south of the Bossier City area, returning after midnight to one of the casinos. A security officer for the second casino testified there was no record of Plater visiting that second casino the night of the robbery.

## II. Legal and Factual Sufficiency

Plater's first two points of error claim, respectively, that the evidence was factually and legally insufficient to support the jury's verdict. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the

evidence, we view all the evidence in a neutral light. The evidence is factually insufficient when, although it is legally sufficient, it is so weak that the verdict appears to be clearly wrong or manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006).

The indictment alleged that Plater, "while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally and knowingly threaten to place Eric Taylor in fear of imminent bodily injury or death, and . . . did then use or exhibit a deadly weapon, to wit: a firearm."

The State offered evidence as to the elements of the crime. Taylor testified he sat next to Plater at a blackjack table in a casino earlier the same day of the robbery. He identified Plater as the man who signaled for him to pull his car over and then threatened him with a pistol and demanded money. Not content with the first $1,100.00 Taylor handed him, Plater specifically demanded "the money from the casino." From a photographic lineup, Taylor identified Plater as the robber. This evidence shows Plater intentionally or knowingly acted to deprive Taylor of his property.

Taylor also testified he feared for his life when Plater threatened him at gunpoint. According to Taylor, he could "see the barrel and feel the barrel being placed against me," saw Plater pull the gun from his pocket or side, the gun was a "pistol-type weapon" with a black barrel, he could not tell if it was cocked, and he thought it could kill him. Plater told Taylor he was "about to get shot,"

4

evidence that Plater intentionally or knowingly threatened or placed Taylor in fear of imminent bodily injury or death. And, despite the fact that no weapon was ever found, Taylor's description of the gun and Plater's statements are evidence a firearm was used or exhibited in the commission of the robbery. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003); *Davis v. State*, 180 S.W.3d 277, 287 (Tex. App.—Texarkana 2005, no pet.); *Riddick v. State*, 624 S.W.2d 709, 710 (Tex. App.—Houston [14th Dist.] 1981, no writ) ("Absent any specific indication to the contrary at trial, the jury may make the reasonable inference, from the victim's testimony, that a gun was used in the commission of a crime and that the gun was a firearm.").

The Texas Court of Criminal Appeals has held that testimony using any of the terms "gun, pistol or revolver" is sufficient to authorize the jury to find that a deadly weapon was used. *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979). In addition, words spoken by the accused during the commission of the offense may be considered in determining whether a weapon is a deadly one. *See English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983). Taylor testified Plater told him that, if he did not give him the money from the casino, "You're about to get shot."

The evidence was sufficient, both legally and factually, to sustain the jury's verdict. We overrule Plater's first two points of error.

## III. No Error in Admission of Photographic Lineup

Plater's third point of error claims the trial court erred in admitting a photographic lineup law enforcement showed to Taylor. The lineup is a single page with six pictures of African-American

men, each appearing to be generally of similar ages and stature.[3] Plater argues the lineup was impermissibly suggestive. We disagree and will overrule this point of error.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g). A trial court abuses its discretion if its decision was arbitrary or unreasonable, *Brown v. State*, 960 S.W.2d 772, 778 (Tex. App.—Dallas 1997, pet. ref'd), or if, given the record and the law, the decision fell outside the zone of reasonable disagreement. *See Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App.—Amarillo 1999, pet. ref'd).

We use "a two-step analysis to determine the admissibility of an in-court identification: 1) whether the out-of-court identification procedure was impermissibly suggestive; and, if suggestive, 2) whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001); *see Simmons v. United States*, 390 U.S. 377, 384 (1968); *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *Barley*, 906 S.W.2d at 33. "[A] finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification." *Ford v. State*, 919 S.W.2d 107, 117 (Tex.

---

[3]The lineup should depict persons with sufficient similarity in appearance to give the witness a reasonable opportunity to identify the defendant and to establish that the identification is reliable. *See Ford v. State*, 794 S.W.2d 863, 866 (Tex. App.—El Paso 1990, pet. ref'd). The photographs used in the lineup should depict persons of the same race, general skin color, age, and height as the suspect. *See, e.g.*, *Barley v. State*, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995); *Rivera v. State*, 808 S.W.2d 80, 95 (Tex. Crim. App. 1991).

Crim. App. 1996) (quoting *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988)); *see*

*Williams v. State*, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984).

In determining if a photographic display is impermissibly suggestive, we examine the totality

of the circumstances. Each case must be decided on its own facts. *Crawford v. State*, 770 S.W.2d

51, 52 (Tex. App.—Texarkana 1989, no pet.) (citing *Simmons v. United States*, 390 U.S. 377 (1968);

*Limuel v. State*, 568 S.W.2d 309 (Tex. Crim. App. [Panel Op.] 1978)). In *Crawford*, we held that,

where the victim had a sufficient opportunity to see the defendant, the victim's observation and

description of Crawford had a sufficient independent origin to support her in-court identification.

*Crawford*, 770 S.W.2d at 52–53.

Plater argues that the lineup was suggestive because his picture was placed in the bottom

right corner of the page "where the victim's eyes would naturally fall first" and because Plater's

photograph had the "lightest background." We are not convinced the photographic lineup shown to

Taylor was impermissibly suggestive. Viewing the entire array, we cannot say Plater's picture is

"highlighted" or stressed over the other photographs.[4] *Cf. Garcia v. State*, 563 S.W.2d 925, 929

(Tex. Crim. App. 1978) (in totality of circumstances, that not all subjects of photographs had

---

[4]In a recent unpublished decision, the Waco Court of Appeals was presented with a similar argument: the appellant contended the photographic lineup in his case was impermissibly suggestive where there was a "halo" effect on his picture; reviewing the record in that case, the reviewing court found the lineup was not impermissibly suggestive. *Jackson v. State*, No. 10-07-00089-CR, 2008 Tex. App. LEXIS 698 (Tex. App.—Waco Jan. 30, 2008, pet. ref'd) (mem. op., not designated for publication).

moustaches or tattoos, and appellant was several inches taller than other subjects, did not render lineup impermissibly suggestive).

Even if we found the array impermissibly suggestive, we find no evidence this "suggestive procedure" gave rise to a substantial likelihood of irreparable misidentification. Factors to be considered in reviewing identification testimony include: (1) the witness' opportunity to view the defendant during the commission of the offense; (2) the witness' degree of attention; (3) the accuracy of the prior description of the accused; (4) the level of certainty of the identification; and (5) the amount of time between the crime and confrontation. *Hill v. State*, 692 S.W.2d 716, 721 (Tex. Crim. App. 1985) (citing *Munguia v. State*, 603 S.W.2d 876, 878 (Tex. Crim. App. 1980)). Taylor testified he recognized Plater from the casino. This identification is made more reliable by Taylor's recollection that on three occasions, at the blackjack table, Plater asked Taylor for a chip. Taylor said he had nothing to drink at the casino and had played at the table for about an hour. This indicates he had a good opportunity to observe Plater. He told Deputy Dale Hukill, the night of the robbery, that the robber was a man Taylor had seen at the casino. When Lieutenant Pamela Dunklin presented Taylor with the photographic lineup, she told him not to pick anyone unless Taylor was "a hundred percent sure." Taylor "took about two seconds" to pick Plater out of the photographs. Although more than two years elapsed between the crime and trial, there is nothing in the record to impugn Taylor's certainty of his identification. After viewing a lineup, later identification is admissible as long as the record demonstrates that a witness' prior knowledge of the accused serves

8

as an independent source for the identification. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983). No error is shown.

## IV.      Motion for Directed Verdict

Plater's last point of error claims the trial court should have granted Plater's request for a directed verdict. Specifically, Plater claims there was no evidence of a deadly weapon being used in the commission of the robbery.

This issue has been discussed in the legal sufficiency discussion, and we will not repeat it. Suffice it to say that, even though the weapon used was never produced, other evidence was sufficient to prove the use of a deadly weapon. Taylor testified Plater pulled a gun on him, as opposed to just using his fingers, because he "could see the barrel and felt the barrel being placed against me." When Taylor hesitated giving Plater the money, he said Plater told him, "You're about to get shot." It is not required the State produce the actual weapon used in the offense. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. [Panel Op.] 1982) (concluding that, although knife was not produced, testimony established that knife was deadly weapon); *Rogers v. State*, 795 S.W.2d 300, 303 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (holding that, although gun was not in evidence, testimony supported finding that appellant carried gun at time of robbery). The trial court

did not err in denying Plater a directed verdict. We overrule this point and affirm the judgment and conviction.


                                                           Jack Carter
                                                           Justice

Date Submitted:      April 30, 2008
Date Decided:       June 20, 2008

Do Not Publish